# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS,
### DALLAS DIVISION

| | | |
|---|---|---|
| **Neffertiti Robinson, individually and on behalf of those similarly situated** | § § § § § | Civil Action Number : _____ |
| Plaintiff | § | |
| v. | § | |
| **J & K Administrative Management Services, Inc. and Kimberly M. Meyers** | § § § | |
| | § § | |
| Defendants | § | |

---

### PLAINTIFF'S ORIGINAL COMPLAINT TO COMPEL ARBITRATION

---

Pursuant to Sections 4 and 5 of the Federal Arbitration Act, 9 U.S.C. 1 *et seq.*, Neffertiti Robinson ("**Plaintiff**" herein), individually and on behalf of those similarly situated, brings this action to compel arbitration against the above-named Defendants.

### NATURE OF ACTION

1.      This is an action under Sections 4 of the Federal Arbitration Act, 9 U.S.C. 1 *et seq.*, ("**FAA**") to compel J&K Administrative Management Services, Inc. and Kimberly M. Meyers (singularly "**Defendant**" and together "**Defendants**") to arbitrate the Plaintiff's Fair Labor Standards Act ("**FLSA**") claims for minimum wage and overtime compensation pursuant to a valid and enforceable arbitration agreement between Plaintiff and J&K Administrative Management Services, Inc. d/b/a Home Instead Senior Care ("**Defendant J&K**"), which requires the

arbitration of, among other things, any claims against Defendant J&K or any of its officers, directors, shareholders, partners, owners, employees, and agents, including wage claims.

## PARTIES AND JURISDICTION

2.      Plaintiff is an individual residing in Dallas County in the Northern District of Texas and this Division.  During the three-year period preceding the filing of this action, Plaintiff was employed by Defendants within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 201 *et. seq.*  At all times hereinafter mentioned, Plaintiff was an individual employee who was engaged in commerce or in the production of goods for commerce as required by 29 U.S.C. §§ 206-207.

3.      Defendant J&K is a Texas corporation engaged in commerce or the production of goods for commerce within the meaning of the FLSA and is obligated to ensure that all employees are paid in accordance with the FLSA.  Defendant J&K's office address is 8209 Mid-Cities Blvd., North Richland Hills, Texas 76182.  Defendant J&K may be served by serving its registered agent, Kimberly N. Meyers, 8209 Mid-Cities Blvd., North Richland Hills, Texas 76182 or wherever its registered agent may be found.

4.      Upon information and belief, Defendant Kimberly N. Meyers ("Defendant Meyers") is an individual and a Texas resident residing in the Northern District of Texas.  Defendant Meyers can be served at 8209 Mid-Cities Blvd., North Richland Hills, Texas 76182 or wherever she can be found.

5.      Defendant Meyers is Plaintiff's employer within the meaning of the FLSA because she has operational control of Defendant J&K.

6.      Venue exists in this judicial district pursuant to 28 U.S.C. § 1391.

7.      Defendants carry on substantial business in the Northern District of Texas and have sufficient minimum contacts with this state to be subject to this Court's jurisdiction.

8.      This Court has jurisdiction to hear this complaint pursuant to the district court's federal question jurisdiction as set forth in 28 U.S.C. § 1331. Specifically, this complaint is brought pursuant to Section 4 of the FAA which provides that any party, who "is aggrieved by the alleged failure . . . or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under title 28, in a civil action . . . of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement."   Additionally Section 5 of the FAA provides that "the court shall designate and appoint an arbitrator" if one is not provided for in the arbitration agreement.

9.      Plaintiff seeks to arbitrate her claim that Defendants violated the FLSA.

BACKGROUND

**A.  The Arbitration Agreement**

10.      Plaintiff was hired by Defendant J&K in the position of a "CAREgiver." Upon information and belief, just as all caregivers hired by Defendant J&K were, Plaintiff was provided copies of and/or access to the Defendant J&K's Occupational Injury Benefit Plan (the "**Plan**"), the Summary Plan Description of the Occupational Injury Employee Benefit Plan (the "**Summary Plan Description**"), and the Occupational Injury Benefit Plan Benefits Schedule executed by Kimberly Meyers dated November 24, 2008 (the "**Benefit Plan Benefits Schedule**") for Plaintiff to review. At the same time (again as all caregivers were), she was provided a copy of the Defendant J&K's CAREgiver Handbook & Policy & Procedure Guidelines (the "**Handbook**"). Upon information and belief, Plaintiff expressly acknowledged in her Employment Agreement having received the Handbook and that she was responsible for reviewing the information contained in the Handbook.

11.      Included in the Handbook was an "Election and Arbitration Agreement" related to the Company's Employee Injury Benefit Plan (the "**Arbitration Agreement**"). The pertinent portion of the handbook where the Arbitration Agreement is located is attached hereto as **Exhibit A.**  That agreement provided that an employee accepted the terms thereof by signing the "Occupational Injury Benefit Plan," which, upon information and belief, Plaintiff did after she

allegedly had been provided access to the Plan, the Summary Plan Description, the

Benefit Plan Benefits Schedule and the Handbook.

12.     The Arbitration Agreement states in relevant part as follows:

**MUTUAL PROMISES TO RESOLVE CLAIMS BY BINDING ARBITRATION:** I recognize that disputes may arise between the Company (or one of its affiliates) and me during or after my employment with the Company. I understand and agree that any and all such disputes that cannot first be resolved through the Company's internal dispute resolution procedures or mediation must be submitted to binding arbitration.

. . .

**CLAIMS SUBJECT TO ARBITRATION:** claims and disputes covered by this Agreement include:

(a) all claims and disputes that I may now have or may in the future have against the Company and/or against its successors, subsidiaries and affiliates and/or any or [sic] their officers, directors, shareholders, partners, owners, employees and agents, or against any Company employee benefit plan (including the Plan) or the pan's [sic] administrators or fiduciaries, and

(b) all claims and disputes that the Company and/or its successors, subsidiaries and affiliates and/or any of their officers, directors, shareholders, partners, owners and any Company employee benefit plans (including the Plan) may now have or may in the future have against me, my spouse, children, heirs, parents and/or legal representatives.

The types of claims covered by this Agreement include, but are not limited to, any and all:

(a) claims for wages or other compensation; claims for breach of any contract, covenant or warranty (express or implied);

. . .

(f) claims for a violation of any other federal, state or other governmental law, statute, regulation or ordinance; and

(g) claims challenging the validity or enforceability of this Agreement (in whole or in part) or challenging the applicability of the Agreement to a particular dispute or claim.

13.     Plaintiff is bound by the provisions of the Arbitration Agreement.

14.     Defendants are bound by the provisions of the Arbitration Agreement.

**B.   Plaintiff's Filing with JAMS**

15.     The Arbitration Agreement at issue between Plaintiff and Defendants does not contain procedures for the arbitration forum or rules.

16.     Thus, on January 23, 2014 Plaintiff submitted a <u>Specification of Claims</u> and demand for arbitration to Defendants through their attorney, David Goodman.

17.     In a letter accompanying the filing of the Specification of Claims, Plaintiff sought Defendants' agreement as to an appropriate arbitration forum.

18.     Defendants would not agree on an arbitration forum or even propose an acceptable arbitration forum unless Plaintiff agreed to restrict the scope of her arbitration.

19.     As Defendants had sold their business in November of 2013, Defendants appeared content to let the statute of limitations run on Plaintiff's claim and the potential opt-in claimants' claim for back pay and would not even

acknowledge a claim had been filed.

20.     Due to a lack of agreement from Defendants and with her statute of limitation running, Plaintiff unilaterally filed a <u>Demand for Arbitration Before JAMS</u> on or about February 18, 2014 (the "Demand"), against Defendants in which Plaintiff sought, individually and on behalf of those similarly situated, arbitration of a claim for unpaid wages pursuant to Sections 6 and/or 7 of the FLSA. 29 U.S.C. §§ 206, 207.  Plaintiff's Demand is attached as **Exhibit B**.  In connection with the Demand, Plaintiff subsequently filed four <u>Notices of Consent</u> with JAMS from Ann Knight, Joan Stanton, Gloria Turner and Sandra Harris.

### C.  <u>Request for Appointment of JAMS</u>

21.     Defendants have previously agreed to arbitrate a FLSA claim brought by a different employee under the same arbitration agreement.  That arbitration was conducted at JAMS.

22.     Lynette James ("**James**"), a former caregiver of Defendants with the same job description and subject to the same policies as Plaintiff, filed an action in federal district court against Defendants on March 1, 2013, asserting claims under the FLSA for unpaid wages.   Defendants, notifying James that she was subject to the Arbitration Agreement, filed a Motion to Compel Arbitration and Motion to Dismiss with the Court on April 4, 2013.  James filed a Motion to Dismiss and agreed that the claim should be arbitrated.  Because the Arbitration Agreement is

silent on the matter of the applicable arbitration forum and rules, the parties, through their attorneys, agreed to the application of the rules and procedures of JAMS and the JAMS Resolution Center as the forum in which to arbitrate James' claim (the parties disagreed on the applicability of the JAMS Policy on Employment Arbitration Minimum Standards of Procedural Fairness but left that issue for the Arbitrator to decide).  The parties to that action proceeded accordingly and, ultimately, settled the James claim.

23.     Because the Arbitration Agreement is silent on the matter of the applicable arbitration forum and rules, and because the Defendants, through their counsels, previously agreed in the James claim (made under this same Arbitration Agreement and same pay policies of Defendants), to the application of JAMS rules and the selection of JAMS Resolution Center as the arbitration forum, Plaintiff submitted her Demand in this action again with JAMS.

24.     Plaintiff requests this Court enter an order requiring the parties to arbitrate before JAMS or another appropriate arbitration forum such as the American Arbitration Association.

### CLAIM FOR RELIEF

25.     Plaintiff repeats and re-alleges the allegations set forth previously in the above paragraphs 1-24, inclusive, as though fully set forth herein.

26.     The Plan and the related Arbitration Agreement effect commerce within the meaning of the FFA.

27.     Because the contracts in question effect "commerce," the Arbitration Agreement is "valid, irrevocable and enforceable" within the meaning of Section 2 of the FAA.

28.     The Arbitration Agreement is enforceable by the Court under Section 4 of the FAA, which authorizes the Court to enter an Order directing that arbitration proceed in the manner provided for in the Arbitration Agreement.

29.     Additionally, Plaintiff requests that the Court appoint an arbitrator pursuant to section 5 of the FAA.  Section 5 of the FAA permits the Court to appoint an arbitrator in the event that the parties had not set out a procedure for appointing an arbitrator. 9 U.S.C. § 5. Plaintiff requests that the Court order that the arbitration of Plaintiff's claims, be conducted by JAMS pursuant to the JAMS Employment Arbitration Rules & Procedures.

## PRAYER FOR RELIEF

30.     Wherefore, Plaintiff respectfully requests that the Court:

a.     Order Defendants to submit to arbitration of Plaintiff's claims under the provisions of the FLSA;

b.     Order Defendants to submit to arbitration conducted by JAMS pursuant to the JAMS Employment Arbitration Rules & Procedures;

c.     Award attorneys' fees and costs of this action to

Plaintiff; and

        d.      Award all other relief to which Plaintiff is justly

entitled.

                    Respectfully submitted:

                    The Law Office of Chris R. Miltenberger, PLLC

                    By:      */s/ Chris R. Miltenberger*
                              Chris R. Miltenberger
                              Texas State Bar Number 14171200

                    1340 N. White Chapel, Suite 100
                    Southlake, Texas 76092
                    817-416-5060 (office)
                    817-416-5062 (fax)
                    chris@crmlawpractice.com

                    Attorney for Plaintiff

# Notice to Employees Concerning Workers' Compensation in Texas

**Coverage:** Home Instead Senior Care has elected not to obtain workers' compensation insurance coverage. As an employee of a non-covered employer, you are not eligible to receive workers' compensation benefits under the Texas Workers' Compensation Act. However, a non-covered employer can and may provide other benefits to injured employees. You should contact your employer regarding the availability of other benefits or compensation for a work-related injury or illness. In addition, you may have rights under the common law of Texas should you suffer an on the job injury or illness. Your employer is required to provide you with coverage information when you are hired or whenever the employer becomes, or ceases to be, covered by workers' compensation insurance.

**Safety Hotline:** The Commission has established a 24-hour toll-free telephone number for reporting unsafe conditions in the workplace that may violate occupational health and safety laws. Employees are prohibited by law from suspending, terminating, or discriminating against any employee because he or she in good faith reports an alleged occupational health or safety violation.

Contact the Division of Workers' Health and Safety at 1-800-452-9595

Home Instead Senior Care does not have workers' compensation insurance coverage to protect you from damages resulting from work-related illness or injury. Home Instead Senior Care has elected to use a private insurance company to provide coverage under the guidelines under the common law of Texas. Contact Home Instead Senior Care in the event of any injury received on the job immediately. The office will direct you on how to proceed according to the insurance provider's procedures and requirements.

If an emergency please call 911 - do not drive yourself to the hospital. Our insurance provider will direct you to a qualified doctor to determine the best care for your injuries.

## ELECTION AND ARBITRATION AGREEMENT

By signing the Occupational Injury Benefit Plan, I, the undersigned employee of J&K Administrative Management Services (hereinafter "the Company"), voluntarily elect to participate in the J&K Administrative Management Services Employee Injury Benefit Plan (hereinafter the "Plan") and agree with the Company to the following

**ENROLLMENT IN THE PLAN:** I understand that the Company, as expressly permitted by Texas law, Does not carry workers' compensation insurance for its Texas employees, that it is a "non- subscriber" under the Texas Workers' Compensation Act (hereinafter the "Act"), that it is not required as a non-subscriber to provide any benefits whatsoever for-on-the job injuries, that it has instead voluntarily established the Plan under federal law to provide certain benefits for on-the-job injuries, and that the Plan is not workers' compensation insurance.

I understand that if I am injured on the job, I am, by signing and agreeing to this Agreement, eligible under the Plan's terms for the medical, disability, death, burial and dismemberment benefits described in the Plan and summarized in the Summary Plan Description. I understand that if I reject this Agreement, I will not be eligible for Plan Benefits.

I understand and agree that the Plan's benefits are not workers' compensation benefits, but are provided without regard to my own fault or negligence, without the necessity of me initiating a lawsuit or arbitration, and without me proving that the Company (or one of its employees) was negligent in causing my injury (or death).

24

Exhibit A to Robinson Complaint

I have received a copy of the Summary Plan Description of the Plan. I understand and agree that, if I am injured on the job at the Company, I will follow the rules and procedures described in the Summary Plan Description.

**MUTUAL PROMISES TO RESOLVE CLAIMS BY BINDING ARBITRATION:** I recognize that disputes may arise between the Company (or one of its affiliates) and me during or after my employment with the Company. I understand and agree that any and all such disputes that cannot first be resolved through the Company's internal dispute resolution procedures or mediation must be submitted to binding arbitration.

I acknowledge and understand that by signing this Agreement I am giving up the right to a jury trial on all of the claims covered by this Agreement In exchange for eligibility for the Pan's medical, disability, dismemberment, death and burial benefits and in anticipation of gaining the benefits of a speedy, impartial, mutually-binding procedure for resolving disputes.

This agreement to resolve claims by arbitration is mutually binding upon both me and the Company (and it affiliates), and it binds and benefits our successors, subsidiaries, assigns, beneficiaries, heirs, children, spouses, parents and legal representatives.

**CLAIMS SUBJECT TO ARBITRATION:** claims and disputes covered by this Agreement include:
(a)        all claims and disputes that I may now have or may in the future have against the Company and/or against its successors, subsidiaries and affiliates and/or any or their officers, directors, shareholders, partners, owners, employees and agents, or against any Company employee benefit plan (including the Plan) or the pan's administrators or fiduciaries, and
(b)        all claims and disputes that the Company and/or its successors, subsidiaries and affiliates and/or any of their officers, directors, shareholders, partners, owners and any Company employee benefit plans (including the Plan) may now have or may in the future have against me, my spouse, children, heirs, parents and/or legal representatives.
The types of claims covered by this Agreement include, but are not limited to, any and all:
(a)        claims for wages or other compensation; claims for breach of any contract, covenant or warranty (express or implied);
(b)        tort claims, including negligence, negligence per se and gross negligence claims (including claims for personal or bodily injury or physical, mental or psychological injury, without regard to whether or not such injury was sustained on the job);
(c)        claims for wrongful termination (including retaliatory discharge claims under Chapter 451 of the Texas Labor Code);
(d)        claims of harassment or discrimination (including claims based on race, sex, religion, national origin, age, medical condition or disability);
(e)        claims for benefits under the Plan or any other employee benefit plan or program sponsored by the Company (after exhausting administrative remedies under the terms of such plans);
(f)        claims for a violation of any other federal, state or other governmental law, stature, regulation or ordinance; and
(g)        claims challenging the validity or enforceability of this Agreement (in whole or in part) or challenging the applicability of the Agreement to a particular dispute or claim.
**CLAIMS NOT SUBJECT TO ARBITRATION:** However, the following matters are expressly not covered by this Agreement: (a) any criminal complaint or proceedings, and (b) claims before the Texas Workforce Commission for unemployment benefits.

25

Exhibit A to Robinson Complaint

**COMPLETE AGREEMENT:** The Arbitration Procedures in Section IX of the Summary Plan Description (and also in Section 1, Paragraph B of the Plan) are incorporated by reference into, and made part of, this Agreement the same as if they were all written here.

This Agreement, together with the incorporated Arbitration Procedures in Section IX of the Summary Plan Description, is the complete agreement between the Company and me. It takes the place of any other oral understanding about arbitration, but other written agreements, policies or procedures may also require me to arbitrate any disputes that I may have with the Company. I am not relying on any statements, oral or written, on the subject, effect, enforceability or meaning of this Agreement, except as specifically stated in this Agreement. If any provision of this Agreement is determined to be void or otherwise unenforceable, in whole or in part, such determination shat not effect the validity of the remainder of this Agreement.

**NOT AN EMPLOYMENT AGREEMENT:** Neither this Agreement, the Plan nor the Summary Plan Description shall ever be construed to create any contract of employment, express or implied. Nor does this Agreement, the Plan or the Summary Plan Description in any way alter the at-will status of my employment with the Company.

**RATIFICATION BY RECEIPT OF PLAN BENEFITS:** I AGREE THAT EACH AND EVERY TIME THAT I RECEIVE plan benefits, or have Plan benefits paid to a medical provider on my behalf, I ratify and reaffirm this Agreement the same as if I had signed this agreement again on the date the benefits were paid.

**REQUIREMENTS FOR MODIFICATION OR REVOCATION:** This Agreement will survive the termination of my employment with the Company. This Agreement can only be revoked (except as provided in the paragraph below) or modified by a writing signed by both me and the Company's authorized representative that specifically states an intent to revoke or modify this Agreement, and this requirement of a signed writing cannot itself be waived except by such a signed writing.

**REVOCATION OF ACCEPTANCE:** If, after accepting this Agreement by signing below, I decide to revoke my acceptance of this Agreement, I may do so only by notifying the Company in writing by certified mail, return receipt requested of my revocation. I understand and agree that I may not revoke my acceptance of this Agreement if the Plan has paid (or become obligated to pay) benefits to or for me. I understand and agree that I may only revoke my acceptance of this Agreement: (a) within five (5) calendar days after the date of my signature below, or (b) within five (5) calendar days after receiving written notice of a material reduction in benefits provided by the Plan

**VOLUNTARY AGREEMENT: I acknowledge and agree that I have carefully read this Agreement, that I understand its terms, and that I have entered into this agreement voluntarily and without duress, pressure or coercion from any person and without relying on any promises or representations by the Company other than those contained in this Agreement itself. I am not under the influence of alcohol or any other impairing substance, nor am I under any mental incapacity that would affect me at the time of signing this Agreement. I am aware of the consequences of signing this Agreement and, to the extent that I deem necessary, I have consulted or will consult with an attorney.**

26

Exhibit A to Robinson Complaint

**ARBITRATION**

| | | |
|---|---|---|
| Neffertiti Robinson, individually and | § | |
| on behalf of all those similarly situated | § | |
| | § | |
| Claimant, | § | |
| v. | § | Case number: _____ |
| | § | |
| J & K Administrative Management | § | |
| Services, Inc. and Kimberly M. Meyers | § | |
| | § | |
| Respondents | § | |

<u>Specification of Claims</u>

Claimant Neffertiti Robinson, individually and on behalf of all others similarly situated ("Claimant" and "Class Members" herein) brings this Fair Labor Standards Act ("FLSA") arbitration against the above-named Respondents and shows as follows:

## A. Nature of Suit.

1.  The FLSA was passed by Congress in 1938 as remedial legislation intended to benefit and protect workers. *See Barrentine v. Ark.-Best Freight Sys., Inc.*, 450 U.S. 728, 739 (1981); *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 727 (1947). One of the primary purposes of the FLSA is to protect workers from "substandard wages and oppressive working hours." *Barrentine*, 450 U.S. at 739; *see* 29 U.S.C. § 202(a), (b) (stating Congress' intent to eliminate substandard labor conditions). "[T]he FLSA was designed to give specific minimum protections to *individual* workers and to ensure that *each* employee covered by the Act would receive '[a] fair day's pay for a fair day's work' and would be protected from the evil of 'overwork' as well as 'underpay.'" *Barrentine*, 450 U.S. at 739 (quoting *Overnight Motor Transp. Co. v. Missel*, 316 U.S. 572, 578 (1942) (quoting 81 Cong. Rec. 4983 (1937) (message of President Roosevelt))). To achieve its humanitarian goals, the FLSA "limits to 40 a week the number of hours that an employer may employ any of his employees subject to the Act, unless the employee receives compensation for his employment in excess of 40 hours at a rate not less than one and one-half times the regular rate at which he is employed." *Walling v. Helmerich & Payne*, 323 U.S. 37, 40 (1944) (discussing the requirements of 29 U.S.C. § 207 (a)).

## B. Parties.

Exhibit B to Complaint
# Exhibit A to Demand

2. In the three-year period preceding the filing of this action, Claimant was employed by Respondents within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 201 et. seq. At all times hereinafter mentioned, Claimant was an individual employee who was engaged in commerce or in the production of goods for commerce as required by 29 U.S.C. §§ 206-207. Claimant's written consent to become a party plaintiff is attached as Exhibit "A."

3. The **"Class Members"** are other caregivers that were employed by Respondents in the three-year period preceding the filing of this action and who performed services outside a private home in any of the workweeks.

4. Respondent J & K Administrative Management Services, Inc. ("Respondent J & K") is a Texas corporation engaged in commerce or the production of goods for commerce within the meaning of the FLSA and is obligated to ensure that all employees are paid in accordance with the FLSA.

5. Respondent Kimberly N. Meyers ("Respondent Meyers") is an individual and President of Respondent J & K.

## C. <u>Coverage</u>.

6. At all material times, Respondents have acted, directly or indirectly, in the interest of an employer with respect to Claimant.

7. At all times hereinafter mentioned, Respondents have been an employer within the meaning of the Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

8. At all times hereinafter mentioned, Respondents have been an enterprise with the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

9. At all times hereinafter mentioned, Respondents have been an enterprise engaged in commerce in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), in that said enterprise has had employees engaging in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce for any person and in that said enterprise has had

Exhibit B to Complaint

and has an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level which are separately stated).

10. Respondent Meyers had authority to set corporate policy, participate in decisions regarding the classification of employees and the payment of minimum wage and overtime as well as participate in decisions regarding whether or not to pay Claimant minimum wage and/or overtime. In addition, Respondent Meyers had operational control of significant aspects of the Respondent J & K's day-to-day functions and independently exercised control over the work situation. She had direct involvement in the day-to-day operation of Respondent J & K and had some direct responsibility for the supervision of the employees.

11. Respondent Meyers acted, directly or indirectly, in the interests of an employer in relation to Claimant.

12. At all times hereinafter mentioned, Claimant was an individual employee who was engaged in commerce or in the production of goods for commerce as required by 29 U.S.C. §§ 206-207.

13. Claimant was employed by Respondents within the applicable statute of limitations.

### D. Factual Allegations.

14. Claimant worked for Respondents J&K and Meyers at their North Richland Hills, Texas facility as a caregiver. Claimant provided caretaking services for Respondent's elderly and infirm clients.

15. Upon information and belief J&K and Meyers sold their franchise to in November of 2013.

16. During the time period, Claimant's job responsibilities consisted of providing caretaking services to clients of Respondents. At times and on many occasions, Claimant provided the services in hospitals, assisted living facilities, nursing homes or group homes (collectively facilities that are not considered "private homes").

17. Because Claimant worked outside a private home the companion exemption of the FLSA available to caregivers working in private homes does not apply to her.

Exhibit B to Complaint

18. In a March 30, 1999 Opinion Letter (a copy of which is attached as Exhibit B)
    specifically on point, the United States Department of Labor wrote:

> **The companionship exemption will not apply to time spent by a home
> care worker who renders services to a person who resides in a group
> home, nursing home or hospital. Services performed outside of a private
> home would not be within the term "domestic service."**

19. When Claimant and the Class Members worked an "overnight," usually consisting of
    more than 12 hours, Claimant and the Class Members were paid a single fixed-fee
    which was at a rate lower than the minimum wage.

20. Claimant and the Class Members regularly worked in excess of 40 hours a week
    and during many if not all of those weeks worked at facilities not considered a private
    home.

21. Respondents did not pay Claimant and the Class Members time-and-one-half their
    regular rate of pay for the hours that Claimant and the Class Members worked
    over 40 hours a week.

22. Respondents did not pay Claimant and the Class Members the minimum wage
    required by the FLSA.

23. Respondents knowingly, willfully, and/or with reckless disregard carried out its illegal
    pattern and/or practice of failing to pay the minimum wage and/or overtime
    compensation with respect to Claimant and the Class Members.

24. The FLSA requires employers to keep accurate time records of hours worked by
    nonexempt employees. 29 U.S.C. § 211 (c).

25. In addition to the pay violations of the FLSA identified above, Respondents also failed
    to keep proper time records as required by the FLSA.

26. Claimant has retained the Law Office of Chris R. Miltenberger, PLLC to represent her
    in this litigation and has agreed to pay a reasonable fee of its services.

### E. Collective Action Allegations.

---

27. Other employees have been subject to Respondents' compensation policy which is in willful violation of the FLSA. Some of these employees have worked with Claimant and have reported that they were paid in the same manner as Claimant, i.e., less than the minimum wage and with no overtime pay for hours worked in excess of 40 per workweek. Thus, from discussion with these employees, Claimant is aware that the illegal practices or policies of Respondents have been uniformly imposed on the Class Members.

28. The Class Members performed job duties the same as Claimant. Those duties are typically associated with non-exempt employees. Moreover, the Class Members regularly worked more than 40 hours in a workweek and were not paid the minimum wage and/or one-half their regular rate of pay for hours worked in excess of 40 hours in a work week.

29. Accordingly, the Class Members are similarly situated to Claimant in terms of job duties and pay provisions.

30. Respondents' failure to pay the minimum wage and/or overtime compensation at the rates required by the FLSA arises from generally applicable policies or practices of Respondents and does not depend on the personal circumstances of the Class Members. Thus, Claimant's experience is typical of the experience of the Class Members.

**31.** Respondent J&K and Meyers operated three facilities in the Dallas/ Fort Worth/ Wichita Falls area (the "Locations") each of which operated under the same policies and practices of failing to pay the minimum wage and/or overtime compensation as required by the FLSA.

32. Claimant brings this action on behalf of the Class Members employed at any of the Locations.

33. As a collective action, Claimant seeks this Court's appointment and\or designation as representative of a group of similarly situated individuals as defined herein.

### F. Cause of Action: Failure to Pay Wages in Accordance with the Fair Labor Standards Act.

34. Each and every allegation contained in the foregoing paragraphs is re-alleged as if fully rewritten herein.

35. During the relevant period and continuing until the time of trial, Respondents have violated and are violating the provisions of Sections 6 and/or 7 of the FLSA, 29 U.S.C. §§ 206, 207, and 215(a)(2), by employing employees in an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA as aforesaid, without compensating such employees for their work at the minimum wage and for their work in excess of forty hours per week at rates no less than one-and-a-half times the regular rates for which they were employed.

36. Respondents knowingly, willfully, and/or with reckless disregard carried out their illegal pattern or practice of failing to pay the minimum wage and/or overtime compensation with respect to Claimant and the Class Members.

37. Respondents did not act in good faith and/or have reasonable grounds for a belief that their actions did not violate the FLSA nor did they act in reliance upon any of the following in formulating their pay practices: (a) case law; (b) the FLSA, 29 U.S.C. § 201, et seq.; (c) Department of Labor Wage & Hour Opinion Letters; or (d) the Code of Federal Regulations.

38. Upon information and belief Respondents' willfulness is exhibited by the fact that J&K and Meyers were informed by representatives of the Department of Labor that Respondents' policies violated the FLSA, yet Respondents refused to correct such violations.

### G. Relief Sought.

39. WHEREFORE, PREMISES CONSIDERED, Claimant prays that beginning with the date three years before this action was initiated and continuing until the time of trial and judgment, she and all those who consent to be opt-in Claimants in this collective action recover jointly and severally from Respondents, the following:

    a. An Order recognizing this proceeding as a collective action pursuant to Section 216(b) of the FLSA and appointing Claimant and her counsel to represent the Class Members;

b.   An Order requiring Respondents to provide the names, physical addresses, email addresses and telephone numbers of all potential Class Members;

c.   An Order approving the form and content of a notice to be sent to all potential Class Members advising them of the pendency of this litigation and of their rights with respect thereto;

d.   Compensation for all hours worked at a rate not less than the applicable minimum wage for the relevant time period up to an including the date of judgment;

e.   Overtime compensation for all unpaid hours worked in excess of forty hours in any workweek at the rate of one-and-one-half times their regular rates for the relevant time period up to an including the date of judgment;

f.   All unpaid wages and overtime compensation for the relevant time period up to an including the date of judgment;

g.   An award of liquidated damages pursuant to 29 U.S.C § 216 as a result of the Respondents' lack of good faith in failing to pay wages and overtime compensation pursuant to the FLSA;

h.   Reasonable attorney's fees, expert fees, costs, and expenses of this action as provided by the FLSA;

i.   Pre-judgment and post-judgment interest at the highest rates allowed by law; and

j.   Such other relief as to which Claimant may be entitled.

Exhibit B to Complaint

Respectfully submitted:

The Law Office of Chris R. Miltenberger, PLLC


By:  _/s/ Chris R. Miltenberger_____

   Chris R. Miltenberger
   Texas State Bar Number 14171200

1340 N. White Chapel, Suite 100
Southlake, Texas 76092
817-416-5060 (office)
817-416-5062 (fax)
chris@crmlawpractice.com

Attorney for Claimant Neffertiti Robinson

Exhibit B to Complaint

## NOTICE OF CONSENT

I consent to become a party plaintiff in a lawsuit/arbitration seeking damages for unpaid wages under the Fair Labor Standards Act from my employers J & K Administrative Management Services, Inc., Kimberly M. Meyers, other individuals who are determined to be employers under the Fair Labor Standards Act and Home Instead Senior Care and their affiliates.

Date: 12/30/13

Signature: _____

Printed Name: Neffertiti Robinson

Exhibit "A" Consent to be Party Plaintiff

Exhibit B to Complaint

Exhibit A